Thank you, Your Honor. Good morning, Judge O'Scanlan, Judge Tallman, and Judge Smith. Deputy Attorney General John Millay for Appellants Thomas Read and Mettie Simmons. With me at the counsel table is Deputy Attorney General Kendall Mosier, also representing them. With this court's permission, I would like to reserve three minutes to respond to arguments which may be presented by Mr. Schweigert. You may do so, counsel. Just watch the clock as it counts down. Thank you. As this court is aware... May I ask the deputy clerk to start the clock? Thank you. As this court is aware, this case is about two employees of the state of Hawaii who were sued for following the law. It is not about deliberate indifference, failure to investigate, or denial of appellees' 14th Amendment due process rights as they are claiming. Here, Thomas Read and Mettie Simmons calculated Mr. Alston's sentence to conform with Hawaii law based on the documents they had in their possession, which did not include an order issued after the judgment. This appeal raises two issues. One, may employees of the state of Hawaii who follow state laws to the calculation of sentences be held liable to former prisoners if the calculation of the sentence in accordance with law increases the time of incarceration beyond the time the inmate had been believed he would be released? Counsel, we're not getting into the merits, are we? Isn't this simply a qualified immunity issue at this stage? At this stage, Your Honor. That's correct. So the only issue essentially in front of our court is the qualified immunity issue? That's correct, Your Honor. And in that regard, was there evidence in the record that the normal procedure that is followed is for the court, the circuit court, to transmit to the Department of Public Safety the judgment and commitment orders that the circuit court judges sign? There was no evidence in the record, however, that would be in conformance with Hawaiian law, Your Honor, in that the only document that would be transmitted to the Department of Public Safety would be the judgment. Right. And you get that from the court? We would receive that from the court. That's correct. So I assume the warden would not take someone into custody unless he had a judgment? That is absolutely correct, Your Honor. He would not be able to do so. We do not incarcerate prisoners without judgments. We only incarcerate them with judgments. We do not incarcerate them with orders. We release them with orders unless the order complies with the judgment or overrides the judgment in some manner. The record here, as I read it, shows that at some point after the issue was disputed by Mr. Alston, someone on his behalf obtained an amended judgment from a different circuit court judge but did not present a copy of that to the Department of Public Safety, nor did the circuit court transmit a copy. Am I correct? Well, not exactly, Your Honor. There was an order that was issued about three weeks after the judgment. The order conflicted with the judgment in that the order said that the sentences would have run concurrent with each other. And who obtained that order? Well, I believe his public defender at the time obtained that order, and that went in hand-in-hand with the minimum sentence that he received, mandatory minimum sentence. What I'm trying to explore here is was a copy of that order included in the DPS file or not? It was not, Your Honor. It is undisputed that that document was never given to the Department of Public Safety until after this lawsuit was filed and discovery was commenced. The first time we ever saw that was when Mr. Schweigert showed that to Ms. Simmons at her deposition. So I'll just interject one thing. I want to be sure I understand exactly which order Judge Tolman is talking about. Is this the December 1997 order to which you make reference? I believe that's the order he was referring to. That's the one that you're indicating Judge Tolman was not in front of Rita Simmons at any point. That's correct. Until after the lawsuit was filed. Until after the lawsuit was filed. That's correct. I think the answer to my initial question was yes, the order was obtained by someone on behalf of Mr. Alston, but neither that attorney nor the circuit court ever transmitted a copy of it to the Department of Public Safety after it was signed. That is correct, Your Honor. If I didn't understand your question, I'm sorry. I didn't make my question clear. I just want to make sure I understand the record. So then counsel, maybe I should ask Mr. Alston's lawyer this question, but what is the material issue of fact that prevented the district court from ruling on qualified immunity if there's no dispute over that fact? I have no idea, Your Honor, and that's why I'm here. It's because I do not believe there was a dispute as to a material fact that would have precluded Judge King from ruling on our motion for qualified immunity. So if I understand your argument, really your position is it's a question of law as to whether the two officials had an obligation to do more than re-examine the paperwork that they already had in the department's official file when they received his communication and satisfied themselves that they had correctly re-computed the release date under the Hawaii statute. That is exactly why I'm here, Your Honor. Okay. I just want to follow up on Judge Tallman's question. The direct or implied issue here seems to be that there is a duty on the part of, in this case, two folks, to go searching into the records of the case to determine whether there are any records that are not before them. Is that your understanding of the proposition? That is my understanding, Your Honor. And that is what the entire lawsuit is premised on, is there is a duty to go beyond what is in the department's files to search court records, interview judges, and so forth. And I don't find any support in the law for that proposition. I was going to ask you if there's any support under Hawaiian law or any other jurisdiction that you're aware of on that. None, Your Honor. I did extensive searches on this. I cited the court to a number of cases that were similar but not the same. I will note that neither the ACLU or the plaintiff's counsel or appellee's counsel was able to cite any authority for that proposition either below or before this court. Can I just change the subject a little bit? My understanding of the facts of this case include the fact that as of 2005 that the department changed the practice. Can you describe specifically what the change was and what impact, if any, that should have on our deliberations as far as to whether these two folks are entitled to qualified immunity? Yes. In 1985, Hawaii passed a statute that said that if a sentence is handed down at a different time and the sentence is silent as to whether or not it should be concurrent or consecutive, it's supposed to be treated consecutive. For whatever reason, and we don't know why, the Department of Public Safety had a practice of not following that statute. They had a practice of treating all sentences as running concurrent, which, of course, then we ended up releasing hundreds if not thousands of prisoners early in violation of Hawaii law. In 2005, January 1, 2005, the Department of Public Safety issued a new policy that essentially said we're going to follow Hawaii law from here on out. And so we began reviewing the sentences of inmates that were supposed to be released within six months or a year and started writing letters to the inmates saying, gee, you know what, there was a mistake in the original calculation in the max out date. The true max out date is now, at some point in the future, we will treat the two sentences as being consecutive. And in most cases, I gather, it would have extended the sentence beyond what the prisoner originally understood was going to be the sentence. That is correct, Your Honor. Absolutely. Understandably, not a happily received message. No. The Department of Public Safety received a number of letters from unhappy inmates complaining about this issue that are very similar to Mr. Alston's letter. Counsel, do you wish to retain your time at this moment? I think the court has an absolute understanding of why I'm here and the issue, so I'm going to stop now and respond to Mr. Schweigert's argument. You have plenty of reserved time, if you wish. Thank you, Your Honor. We'll hear from the other side. Thanks very much, Your Honors. I'm Jack Schweigert on behalf of the appellee, Mr. Alston. And with me at the counsel's table is Mr. Roland Toomey. I think to understand this case from the full perspective, you have to understand that I believe the law was changed in 1982, not 1985. And the purpose of the change in the law back in 1982 was up to that time you had to give a sentence of a concurrent sentence. That was the requirement of the judges whenever they sentenced an inmate. In 1982, that changed to be able to also give them a consecutive sentence, which was not an option up until 1982. Just so I understand, prior to 1982, was this a practice or was it state statutory or regulatory law that required the concurrent sentence? It would have been statutory. Okay. And then in 1982, it was changed to provide consecutive sentences as well, and that was also a statutory change? That's correct. But as I understand it, all that did was it gave judges more discretion than they previously had enjoyed if they wished in an appropriate case to order a consecutive sentence imposed. That's exactly right. Up to that time, they had to give a concurrent sentence. This change in 1982 gave them the opportunity to as well give a consecutive sentence. But for whatever reason, the Department of Public Safety apparently didn't change the practice that they had been following prior to 1982? Is that what you're saying? We really don't know, Your Honor, when that practice started, but we have to assume it started way back when. I mean, it would certainly make sense if prior to 1982, the law said, we just treat them all concurrently. Right. You could understand how the Department's policy came into existence. Right. Right. Okay. I'm going to start from 82, though, because there's no evidence I have that it was any time after 82 that this practice developed. And this was that practice. And if you look at the excerpts of record, you'll see that in the complaint at paragraph 39, we talk in terms of this being an admitted to practice. And you'll see that the answer on page 62 by the defendants admit and accept that to be the practice. In fact, there's no question that the practice or sentencing of an inmate and the interpretation of that sentence all the way up until 2005, January 1 of 2005, would be that if the judge didn't get careful and be sure to put in his sentence when he's sentencing this individual, that this sentence would be concurrent with any other sentence, that that's where the confusion would arise. But let's just say that everything that you say about the facts is absolutely correct. And I'm not sure how to decide, but I disagree with you about that. But ultimately, isn't the gravamen of this matter that you've got two people working for the department? I don't know whether either one of them is a lawyer. I don't know what their training is. But it seems to be your position that they have an obligation with respect to your client to not only check what is in the record, but to go back in what we now know to be a 1997 document, which apparently was not before them and which bears on this matter, to find that document and make a determination in accordance with your position. Is that right? Not actually, because there will be two orders. Okay. There's a judgment that issues in 1997. Okay. And that judgment did have some confusion to it because it's dealing with a second sentence from a guy who's already got an earlier sentence. So it fits into this category of when you have multiple sentences. But if there's confusion, doesn't that automatically give the defendants in this case an out? Because if there's confusion, they can't possibly know that they're violating the constitutional rights of somebody who is the, not the beneficiary, but the victim of the confusion. But the confusion would be whether to give consecutive or concurrent. And the ambiguity seemed to indicate it would be a concurrent sentence, so that there's a question of whether it's going to be concurrent or consecutive. And the plaintiff may. I respect that. I guess what I'm wrestling with is taking your point as being correct. These are penological officers. They're not lawyers. They look at this as confusion. Let's agree for your purposes that there is confusion. Does not that grant them qualified immunity because they can't know. They have no certainty that they're violating the constitutional rights of your defendant. Well, I have to go a little further if I can. Yes, sir. When you get that judgment, would you be specific with respect to the judgment? I'm looking at the document called judgment. Right. Dated November 20, 1997. Now, that's the judgment that you're referring to. Looks like it's. Do you have the excerpt? Excerpt 38-22. Does that sound right? Okay. I'm looking at. And 38-23. I'm using the supplemental excerpts. And under that, it's 146. I don't know which one you're all looking at, but there are two different sets of. Now, this is a two-page document dated November 20, 1997. The form is headed judgment. Yes, and it's going to say, when you look under the box, we assume minimus to issue immediately towards about the middle on the right. Right. That usually means, and it has been interpreted by other people in prisons, to mean that that sentence is supposed to be effective immediately, not consecutive. So there would be one clue right there. When you drop down a couple of lines, you'll see that the sentences are to run concurrently. Right. There's another point. Now, the way the prisons took that phrase to mean, they said because there were a couple counts here, that those counts are running concurrently. But they also went on to say, because this judgment doesn't say consecutive to any other sentence, that it's going to be a consecutive sentence. And to do that, they're applying a new policy, and that's that new policy that begins in January 1, 2005, which basically attempts to mimic the law that had been in effect for a number of years. But the law basically had fallen into a pattern of total misuse, and the practice that took over as opposed to the law was if the judge didn't get clear, then it would be treated as concurrent. So we have a practice that's treating sentences all the way up to January 1, 2005, as concurrent, and then we have a policy in effect that says if the judgment itself, and it shouldn't limit itself to judgment, but it does say if the judgment itself doesn't say concurrent with any other sentence, that it shall be consecutive. Okay, but I thought your argument in response to Judge O'Scanlan's question was that this November 20, 1997 judgment is actually ambiguous because of the fact that there are two counts of convictions with two different terms, one for ten years and one for five years, and all the judgment says is that the sentences are to run concurrently. Right. It doesn't say anything about any unexecuted time that the defendant might owe on a prior conviction. So that's where the ambiguity arises. Is that right? Is that your argument? Well, concurrent in the sense that it's going to run with that other sentence that's running already. But how would I know that if I were reading this and I'm looking at two counts of conviction, one for five years, one for ten years? Why wouldn't it be just as reasonable for an official computing the term to interpret that language as simply addressing the fact that I've got two counts of conviction of varying terms? Otherwise, I'm going to end up in a five years and consecutive ten years. Because there's going to be more terms, Your Honor. If you keep reading down, you'll see there's going to be mandatory minimums. Yes. Okay, and when you get mandatory minimums, you also get a further order, and that's that further order of sentencing that did also occur. It came out 20 days later, as most orders in this regard would, because it's going to have findings of that. That's the December 10 order. That's December 10, 1997 order. Okay. And in that order, it made it abundantly clear that it was to be concurrent with any other sentence, that the sentence being imposed in that 1997 case. The problem is that this order never got to the department. Is that what you're saying? Well, it wasn't in the institutional file when we checked it for purposes of deposition. Why wasn't it in the file? The November 1997 order was in their file. But not the December one. Right. Okay, but I want to make sure I understand your argument. Your argument is just looking at the November 1997 judgment, I'll call it the original judgment. Right. It's ambiguous. It doesn't answer the question because it has no reference whatsoever to matters that were later clarified. That's correct. Okay. And then my next question is, under Hawaii revised statute 706-668.5, and I only have the 2007 edition, but the last sentence says multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently. Was that Hawaii law at the time of November 20, 1997? Yes. So even if the department's policy was in error or confusing, the fact is that state law answered the question if anybody had bothered to look at the law. I think there's more to it than that, though. Okay. What more? Because I'm back to judge. Thank you, Judge. The thing I would add is the fact of the practice. The practice specifically said if it didn't say that it was to be treated as concurrent, even though the law said that if it didn't say it was to be treated as consecutive. We have many, many, many inmates being sentenced under that practice. But on a 1983 cause of action, in order to defeat a claim of qualified immunity, you must show that the officer acted basically in either willful indifference to the rights of the plaintiff or in violation of law. And in this case, they were not acting in violation of law. So I guess we have to look at the willful indifference problem. And that gets back, I think, to Judge Smith's earlier question as to was it willfully indifferent for the officials not to do more than reexamine their official file. Well, their official file, quite frankly, their official file is supposed to contain all the records. In fact, there is a statute 353-12 that talks about and puts an affirmative duty on the government to make sure they get all the records for sentencing. Well, not to be on the government, but we're talking about two individuals here. Right. One of which they work for the government. But I guess we probably are all struggling with this issue. Where is the authority that you have that says that in order to obtain qualified immunity, these two officers have to have undertaken, I gather, sua sponte, a search not only of the records in their department, but perhaps in any court records related to your defendant to find out whether there was a miscalculation. Is there any such authority in any jurisdiction that you're aware of? Yes. We believe that Haygood and we believe that Alexander, the two Ninth Circuit cases, specifically speak to this issue where you have a duty to investigate. Because in this case, Mr. Austin complained, complained, and complained again. And he specifically said my sentences are not consecutive. But the one thing it seems to me, and maybe I'll ask you, the one thing that seems to distinguish those cases in my mind is the fact that the inmates actually presented further documentation to the officials showing here's why you're in error. And the problem you have here is that Mr. Austin apparently knew, or his lawyer knew, that another order had been obtained to resolve the question, but never bothered to present it to the officials that he was complaining to. And I think that's a good question, Your Honor, for this reason. Number one, we're talking about a long spread of time. 1997 he gets sentenced. This issue is surfacing in 2007. And he didn't even know. Some of the correspondents will say he didn't even know who his lawyer was. He's in Tallahatchie, Mississippi. He's being given a letter without any opportunity for due process. He's being told specifically pursuant to the statute, your sentences, we made a mistake. And, in fact, on this issue of made a mistake, they did this so often, they actually had a form letter for mistakes, this very same mistake. In fact, the reason we say that at that point in time, if there was confusion in the record because of that judgment, that there was a duty to investigate. And why do we say there was a duty to investigate? Because we have to look at what was the situation that these two individuals faced? What was the situation that they confronted? And by the time they confronted this situation, we had already had an earlier case where this very same fact pattern occurred, where a letter goes out saying a mistake has been made, and he goes to court and he gets it corrected. He goes to court because the Department of Public Safety in that earlier case, in that earlier case's timber, had actually called the judge and asked, you know, we've got a judgment here, it seems unclear, what was your intent? But if Mr. Alston had no idea that this had happened, then what was it that prompted a lawyer to go back to the judge? Because he was being sentenced. And he remembers there was no consecutive sentence given. He remembers walking out saying, you've got a 10-year sentence, period. No, no, no, that's not my question. My question is what prompted a lawyer on his behalf to obtain the clarifying order? I'm still trying at a loss to understand why somebody on behalf of Mr. Alston did not provide the correct documentation to the officials who would have realized their mistake if anybody had given it to them. First of all, Mr. Alston, being in Tallahatchie, doesn't have a whole lot of opportunity to go to a court to find out. But somebody's acting on his behalf. I mean, maybe it's me in practice. It's him. He's the one that's asking the Department of Public Safety. No, no, no, counsel, you and I are talking. I'm talking about a lawyer representing Mr. Alston who goes into a circuit court, I assume here on Oahu, and presents a clarifying order which a judge duly enters, but that lawyer never provides the department a copy of that order. And I'm at a loss to understand, was it malpractice because his lawyer forgot to do it? Did the lawyer assume that the circuit court clerk would send a copy of the order to the Department of Public Safety? And if the answer to all those questions is we don't know, then how can we declare the officials are willfully indifferent? Here's the reason, Mr. Alston. Here's the reason for that. And I go by numbers. I go by numbers. First of all, there was before Mr. Alston's case in 2006, Mr. Alston's in 2007, there was an earlier case on all fours where they came out with the same kind of thing. We made a mistake. That's that form letter. We made a mistake. Your sentence is actually a consecutive sentence. Months later, when he has a public defender assigned for a parole hearing, the public defender recognizes that there's an order out there that whatever reason has not been brought to anybody's attention, and that specific order says that your sentences are concurrent. And that specific public defender then is able to go back to a court and get an amended judgment, a month per ton, that specifically says that the judgment that issued on November of 1997 was meant to be a concurrent judgment. By that time, there had been other cases. With all our work, though, both Haygood and Alexander involved situations where documentation was presented to the appropriate officials, following up on what Judge Tolman indicated. That didn't happen here, did it? It wasn't found. In fact, Judge King even made that a point in his order in denying his qualified immunity. He specifically said even though there was maybe no order submitted showing that the sentences were all to run concurrent, there was the number of times this had happened where, as I said, a form letter where Reed sends out these letters. We made an error. He's done it time and time and time again. On every one of those recalculations that he did time and time and time again, all of those cases, I have five of them, every one of the plaintiffs that are on my case. Thank you, Counselor. Our questions are taking way, way over time. I'm so sorry. No problem. Thank you very much. We are. Your Honor, appellants have no further argument to make. However, if the court has questions, we're more than happy to answer questions. All right. No questions. I think we understand. Thank you, Your Honor. Very good argument. Thank you very much. The case just argued will be submitted for decision, and we will hear argument next in Reed v. The State of Hawaii.
judges: O'scannlain, Tallman, Smith